IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RONALD MARSHALL,                    *

       Plaintiff,                *

vs.                           *
                                  CASE NO. 4:24-CV-133 (CDL)

MAYOR SKIP HENDERSON, *et al.*,   *

       Defendants.           *

O R D E R

The Columbus Consolidated Government has a junked vehicle ordinance that prohibits a person from keeping junked vehicles on private or public property within Columbus.  In 2023, CCG code enforcement officers observed fifty junked vehicles on Ronald Marshall's two properties in Columbus.  The code enforcement officers notified Marshall that his collection of junked vehicles violated the Columbus junked vehicle ordinance, and they warned Marshall verbally and in writing that if he did not remove the vehicles they would be towed away.  Marshall did not remove the vehicles.  The code enforcement officers obtained a court order permitting them to remove the vehicles from the two properties, and Columbus contracted with a towing company to remove the vehicles.  The towing company removed thirty-two junked vehicles from the two properties.  Marshall did not reclaim them.

Marshall brought this action under 42 U.S.C. § 1983 against the Columbus Consolidated Government's mayor, current and former

CCG council members, several CCG employees, CCG's former city manager, and the towing company. He asserts that Defendants deprived him of his property without due process, in violation of the Fourteenth Amendment. Defendants filed summary judgment motions on Marshall's claims. For the reasons set forth below, the Court grants those motions (ECF Nos. 44 & 46).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

In accordance with the Court's local rules, Defendants submitted statements of undisputed material facts with their summary judgment motions. *See* M.D. Ga. R. 56 (requiring a statement of material facts that is supported by the record). Marshall, who is proceeding *pro se*, was sent notices regarding the

significance of Defendants' summary judgment motions.  Notice to Pro Se Party of Mot. for Summ. J. (Sep. 30, 2025), ECF No. 45; Notice to Pro Se Party of Mot. for Summ. J. (Oct. 9, 2025), ECF No. 47.  Marshall did not respond to either statement of material facts.  Defendants' fact statements are thus deemed admitted pursuant to Local Rule 56, and the Court reviewed Defendants' citations to the record to determine whether a genuine fact dispute exists. See M.D. Ga. R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate.").

The Court recognizes that Marshall submitted exhibits in response to Defendants' summary judgment motions, including an unsworn "affidavit" stating that Defendants relied on a fraudulent "abatement warrant," and a document that appears to contain internet search results.  None of these documents creates a genuine fact dispute on Marshall's claims.[1]

Marshall does contend that Defendants violated Federal Rule of Civil Procedure 16(a), which permits the Court to order the parties to appear for a pretrial conference.  The Court, though, did not order the parties to appear for a pretrial conference in this action, so there has been no violation of Rule 16(a).

---

[1] Defendants do not rely on an "abatement warrant."

Marshall also asserts that Defendants violated "Local Rule 16-10." This Court does not have such a rule.

FACTUAL BACKGROUND

Ronald Marshall resides at 2925 Lee Street in Columbus, Georgia. He also owns a second residential property across the street, at 2920 Lee Street. The Columbus Consolidated Government ("CCG") received complaints about an accumulation of junk vehicles and solid waste at Marshall's properties, and CCG's code enforcement officers have spoken with Marshall in person and via telephone multiple times about these issues since 2019. On January 4, 2023, CCG code enforcement officers visited Marshall's properties on Lee Street and observed approximately fifty vehicles on both properties and the adjacent public road. The officers determined that the vehicles were junked motorized vehicles within the meaning of CCG's solid waste collection and disposal ordinance.[2] The code enforcement officers taped a warning to the windshield of each vehicle that was on the public right-of-way stating that the vehicles violated CCG's ordinance on unauthorized accumulation of junk and needed to be removed or repaired; the

---

[2] *See* CCG Code § 13-167.1(13) (defining junked motorized vehicle as "any automobile, truck, or other motorized vehicle which meets any one of the following conditions: is no longer operative; has no current license tag or state certificate of registration; is missing some critical part such as, but not limited to, wheels, engine, transmission, chassis, windshields or headlights; has flat tires; overgrown with vegetation; unknown ownership"). Marshall did not clearly argue or present evidence that the vehicles on his property were *not* junked motorized vehicles within the meaning of the ordinance.

warnings stated that failure to comply could result in a summons to court or towing of the vehicles within seven days.[3]

The code enforcement officers also posted a "30-Day Notice" to the doors of both Lee Street properties and spoke with Marshall about the notices through his doorbell camera.  They also mailed copies of each notice to Marshall via certified mail, which Marshall received.  The notices stated that code enforcement officers found violations of CCG's junked motorized vehicle ordinance, that the violations must be corrected within thirty days, and that if the violations were not corrected within thirty days then Marshall would be summoned to Environmental Court.  *See* Zeigler Aff. Ex. D, Notices, ECF No. 44-16 (listing twenty-three junked vehicles observed at 2925 Lee Street and twenty-seven junked vehicles observed at 2920 Lee Street).

The next week, CCG code enforcement officers returned to the Lee Street properties and found that although the vehicles that had been parked on the public road had been removed, the other vehicles remained on the Lee Street properties.  Marshall arrived at the properties during the inspection.  A CCG code enforcement officer told Marshall that he would be issued a citation for the junked motor vehicles and that the citation would serve as a summons that required Marshall to appear in Environmental Court.

---

[3] *See* CCG Code § 13-167.7(A)(5) ("No person shall keep . . . on private or public property any junked motorized vehicle within Columbus[.]").

The CCG code enforcement officer attempted to serve Marshall with the citation. Marshall refused to accept the citation; instead, he stated, "you're not going to give me a citation" and drove away. Zeigler Aff. ¶ 24, ECF No. 44-11. Marshall had previously refused to accept a similar citation in 2022 and "ran from" CCG code enforcement officers. *Id.* ¶ 25.

On February 7, 2023, CCG code enforcement officers returned to the Lee Street properties and observed that the vehicles listed in the 30-Day Notices remained on the properties. Because Marshall did not remove the vehicles and had refused to accept citations from code enforcement officers, the code enforcement officers concluded that the nuisance could not be timely abated without a court order. Later that day, CCG code enforcement officers appeared at the Muscogee County Recorder's Court, which operates CCG's Environmental Court, and presented evidence regarding the vehicles to Judge Susan Henderson. Judge Henderson determined that the vehicles on the properties and in the public right-of-way violated CCG's junked vehicle and solid waste ordinances, she found that the accumulation of junked vehicles and solid waste on the properties was a nuisance within the meaning of CCG Code § 13-117, and she issued orders for abatement of the nuisance at each property.[4]  Zeigler Aff. Ex. E, Court Order re 2925 Lee Street

_____

[4] Again, Marshall did not clearly argue or present evidence that the vehicles on his property were *not* junked motorized vehicles within the meaning of the ordinance.

(Feb. 7, 2023), ECF No. 44-17 at 2-3; Zeigler Aff. Ex. E, Court Order re 2920 Lee Street (Feb. 7, 2023), ECF No. 44-17 at 4-5. Each abatement order contains Marshall's name and the address and parcel number of the property that is subject to the order. *Id.*

CCG code enforcement officers began the abatement process for the Lee Street properties on February 9, 2023. A code enforcement officer presented copies of the signed abatement orders to Marshall and taped copies of the abatement orders to the door of 2925 Lee Street. CCG contracted with Griffin and Griffin Towing, Inc. to remove the junked vehicles from Marshall's Lee Street properties.[5] On February 9, 2023, Griffin towed fifteen vehicles from the properties. On February 10, 2023, Griffin towed seventeen vehicles from the properties. On-scene vehicle towing and inventory reports were issued for each vehicle, and copies were given to Marshall. Those reports included a description of each vehicle, the name and address of the towing company, and notice that a towed vehicle could be sold at public auction if it remained unclaimed after thirty-two days. Zeigler Aff. Ex. G, On Scene Vehicle Towing & Inventory Reports, ECF No. 44-19. The vehicles that Griffin removed from the properties were placed in an impounding lot to be held for at least thirty days. Although Marshall could have reclaimed those vehicles, he did not take steps to do so.

---

[5] Griffin and Griffin is owned by Chuck Griffin, who is not employed by CCG. The Court refers to the Griffin parties collectively as "Griffin."

DISCUSSION

Marshall asserts claims against Defendants under 42 U.S.C. § 1983, contending that Defendants violated his constitutional rights by taking his vehicles from his private property without notice or an opportunity to be heard.  The Court construes Marshall's claims as Fourteenth Amendment procedural due process claims.[6]  The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend XIV § 1.  To establish a procedural due process claim, Marshall must prove: (1) deprivation of a constitutionally protected property interest, (2) state action, and (3) constitutionally inadequate process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  There is no dispute that CCG deprived Marshall of his vehicles by state action, and CCG does not seriously dispute that Marshall had a constitutionally protected property interest in the vehicles.  The remaining question is whether Marshall presented any evidence that the process CCG provided was constitutionally inadequate.  He did not.

The Due Process Clause "requires notice and the opportunity be heard incident to the deprivation of life, liberty or property

---

[6] In his complaint, Marshall invoked the Fourth and Eighth Amendments, but he did not present any argument or evidence that suggest a violation of either Amendment.  Rather, the crux of Marshall's complaint is that CCG took his property without adequate notice and opportunity to be heard.  This is a classic Fourteenth Amendment procedural due process claim.

at the hands of the government." *Id.* CCG's junked vehicle ordinance establishes procedures for CCG officials to follow if they observe violations of this rule against storing junked motor vehicles on public and private property. CCG Code § 13-167.7(A)(4)-(7).[7] Here, Defendants presented evidence that they followed those procedures for providing due process to owners of allegedly junked vehicles, and Marshall did not point the Court to any evidence that Defendants failed to follow these rules.

First, if a CCG official determines that a vehicle is a junked vehicle within the meaning of the ordinance, then the official must serve notice on the property owner, either personally or by certified U.S. Mail, that the vehicle is considered a "junked motorized vehicle" and must be removed "within 30 calendar days from the date of the notice for private property and seven calendar days for public property." CCG Code § 13-167.7(B)(4). Here, CCG code enforcement officials served this notice on Marshall by posting the notice to the door of each of his properties, by sending the notice to him via certified mail, by taping a notice to the windshield of each vehicle that was in the public right-of-way, and by explaining the notice to him via his doorbell camera. The notices taped to the windshield of vehicles on the public road stated that failure to comply could result in towing

---

[7] Marshall did not argue or present evidence that the junked vehicle ordinance exceeds CCG's authority to regulate and prohibit public nuisances.

of the vehicles within seven days, in accordance with the ordinance. *See* CCG Code § 13-167.7(B)(5) ("If, at the expiration of the applicable period as above provided after the posting of the aforesaid notice, said junked motor vehicle has not been removed from the public street, road or highway or other public or private real property upon which it has remained for said period, the authorized official designated by the city manager shall cause the same to be removed for disposal."). The 30-Day Notices regarding the vehicles that were not on the public road stated that if the violations were not corrected within thirty days, then Marshall would be summoned to Environmental Court. *Id.* (stating that for vehicles left on private property, "the vehicle shall not be removed except by an abatement order obtained through the recorder's court in accordance with the procedures set forth in section 13-117 of the Columbus Code").

Second, if a junked vehicle on private property has not been removed by the deadline set in the notice, then the vehicle may only be removed "by an abatement order obtained through the recorder's court in accordance with the procedures set forth in" CCG Code § 13-117. CCG Code § 13-167.7(B)(5). Here, Defendants presented evidence, which Marshall does not refute, that after code enforcement officials notified Marshall that he had thirty days to remove the junked vehicles, they tried to serve Marshall with a citation that would have given him notice to appear at a

10

hearing before the recorder's court, but he refused to accept it. Then, once the thirty-day deadline passed, the code enforcement officers obtained abatement orders from the recorder's court that authorized them to remove the junked vehicles from Marshall's property.

Third, once a junked vehicle is removed, it must be "placed in an impounding area for a period of not less than 30 calendar days," during which the junked vehicle's owner may reclaim it. CCG Code § 13-167.7(B)(5)-(6). The junked vehicle's owner must be notified of its removal, impounding, and right of reclamation. *Id.* § 13-167.7(b)(7). Here, Defendants presented evidence that Marshall received copies of the on-scene vehicle towing and inventory report for each vehicle, which provided the information about the towing company and warned that if each vehicle was not reclaimed within thirty-two days it could be sold at public auction.

In summary, the present record shows that Marshall received pre-deprivation notice that his vehicles were considered junked vehicles that might be towed away under the ordinance, he could have had an opportunity to be heard at the abatement hearing (although he refused to accept the citation/summons), he had a post-deprivation right to reclaim the vehicles, and if he maintained that the vehicles were removed from his possession unlawfully, then he could bring a post-deprivation state law

11

conversion claim.  Under these circumstances, the Court finds that Marshall has not established a genuine fact dispute on whether the process he received was constitutionally inadequate.  Accordingly, all Defendants are entitled to summary judgment on his § 1983 procedural due process claims.[8]

CONCLUSION

For the reasons set forth above, the Court grants Defendants' summary judgment motions on Marshall's § 1983 procedural due process claims (ECF Nos. 44 & 46).  These are the only claims over which this Court has original jurisdiction.  To the extent that Marshall attempted to assert supplemental state law conversion or unjust enrichment claims against any Defendant, the Court declines to exercise supplemental jurisdiction over such claims, and they are dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"

IT IS SO ORDERED, this 16th day of April, 2026.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[8] Having found that there is no genuine fact dispute on whether a constitutional violation occurred, the Court finds it unnecessary to address CCG's municipal liability argument, the individual CCG Defendants' immunity arguments, and Griffin's state actor argument.

12